*1304 JORDAN, District Judge,
specially concurring:
I concur in the judgment as to the Title IX claims against the UGA and the UGAA, and concur in the panel’s opinion in all other respects. I write separately to explain why I believe Ms. Williams’ Title IX claims against the UGA and the UGAA survive a motion to dismiss.
In the typical Title IX case, deliberate indifference is shown by evidence that the funding recipient, having been placed on actual notice of an act or acts of discrimination or harassment, subsequently does nothing (or virtually nothing) to stop or prevent the offending conduct. Causation is shown by evidence that, as a result of the funding recipient’s deliberate indifference, the plaintiff was subjected to further acts of discrimination or harassment. See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633, 640-41, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999); Gebser v. Lago Vista Indep. School Dist., 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). In my view, Ms. Williams’ case is not the typical Title IX case.
Gebser and Davis each involved what I would call alleged “after-the-fact” deliberate indifference. The funding recipients in Gebser and Davis had no knowledge prior to the first acts of discrimination or harassment by, respectively, the teacher and the student. There was no allegation in Gebser that the school district hired the offending teacher knowing that he had sexually harassed or abused students in the past. Likewise, there was no allegation in Davis that the school district knew, prior to admitting the offending student, or placing him in a classroom with the plaintiff, that the student had a proclivity for sexual harassment. In both cases, therefore, it made sense to require the plaintiff to show that, after receiving actual notice of the discrimination or harassment, the funding recipient did nothing (or close to nothing) to correct the problem, and that this failure led to further discrimination or harassment against the plaintiff. Otherwise, a funding recipient would essentially be facing respondeat superior liability (or maybe even strict liability) for acts of discrimination or harassment committed by others without the recipient’s prior or contemporaneous knowledge.
A rule established in a prior case should not be “woodenly applied” in a later case “without any regard to ... significant differences” in the two cases. See Codispoti v. Pennsylvania, 418 U.S. 506, 535, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974)(Rehn-quist, J., dissenting). This case is different, and significantly different, than the typical Gebser/Davis paradigm in which the funding recipient is oblivious to the threat of discrimination or harassment until some misconduct is committed. Ms. Williams has alleged that the UGA and the UGAA knew, before recruiting and admitting Mr. Cole, (1) that he had sexually attacked two female school employees at his community college’s athletic department by groping them and putting his hands down their pants, and (2) that he had made lewd suggestions to a store clerk while attending another college. Ms. Williams has also alleged that the UGA and the UGAA, with knowledge of these facts, nevertheless admitted Mr. Cole, with a full scholarship, under a special admissions program, because it was believed that he could help the basketball program. Reading the complaint in the light most favorable to Ms. Williams, the UGA and the UGAA allegedly did nothing to monitor or counsel Mr. Cole after his admission. In short, Ms. Williams has claimed that the deliberate indifference in this case *1305 preceded, and proximately caused, her sexual assault and rape. In other words, Ms. Williams has alleged “before-the-fact” deliberate indifference.
I see no reason why a funding recipient should avoid Title IX liability if, with prior knowledge of a prospective student’s or teacher’s documented prior acts of serious sexual misconduct, it admits the student or hires the teacher and then fails to conduct any monitoring or counseling, thereby placing other students in serious danger. In such a scenario, there should not and need not be any requirement that the victim be subjected to a second act of discrimination or harassment before there can be Title IX liability.
Assume that a university, desperate to upgrade its losing women’s volleyball team, decides to hire as its new coach a man who had publicly been forced to leave his two most recent college coaching positions because of allegations that he had sexually harassed some of his female student-athletes. The university checks into the coach’s past — i.e., it does due diligence — and determines that the allegations against the coach were well-founded, despite his vehement denials. The university confirms, for example, that two years earlier the coach had put his hands down the shorts of two of his female players, and that this incident led to the coach’s firing. Yet because of pressure from boosters, including one alumnus who says that he will withhold a substantial donation until the women’s volleyball team starts winning, the university hires the coach, who has won numerous championships and has a history of turning losing programs around. The university does nothing to monitor the coach’s conduct, however, and fails to provide him with any counseling. Less than a year after being hired by the university, the coach sexually assaults one of his players. In such a case, the university’s calculated decision to hire the coach after looking into and verifying his checkered past, combined with its subsequent failure to conduct any monitoring or provide any counseling, would be deliberately indifferent under Title IX. See generally Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (explaining, in Eighth Amendment context, that deliberate indifference exists when an official knows of, and disregards, an excessive risk of harm: “the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference”).
Insofar as they concern the funding recipient’s knowledge and behavior, Ms. Williams’ allegations are not too far removed from the hypothetical described above. Ms. Williams should have the opportunity to prove her allegations against the UGA and the UGAA through discovery, and if the evidence is sufficient to survive summary judgment, to present them to a jury.
Allowing Ms. Williams’ Title IX claims against the UGA and the UGAA to defeat a Rule 12(b)(6) motion, moreover, would not lead to implicit adoption of a watered-down liability standard. For example, if it turns out that the UGA and the UGAA did not know about Mr. Cole’s past sexual misconduct, there will be no Title IX liability, as actual notice will be lacking, and there can not be deliberate indifference without knowledge. Similarly, if it turns out that the UGA and the UGAA learned about the allegations against Mr. Cole, but investigated and found them unsubstantiated, or found them substantiated but monitored and/or counseled Mr. Cole in an *1306 attempt to prevent any similar conduct, there will be no Title IX liability, for the UGA and the UGAA will not have acted with deliberate indifference under Eleventh Circuit precedent. See, e.g., Sauls v. Pierce County School Dist, 399 F.3d 1279, 1285-87 (11th Cir.2005); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1372-75 (11th Cir.2000).