S.W., and Giavonia Hood as parent of S.W., a minor, Plaintiffs,

v.

CLAYTON COUNTY PUBLIC SCHOOLS, Luvenia Jackson, in her individual and official capacity, Gary G. Townsend, in his individual and official capacity, and Roderick W. Arrington, in his individual and official capacity, Defendants.

CIVIL ACTION FILE No. 1:16–cv–0126–TCB

United States District Court, N.D. Georgia, Atlanta Division.

Signed May 12, 2016

Bret Thomas Thrasher, William James Shaughnessy, Thompson O'Brien Kemp & Nasuti, P.C., Norcross, GA, Kevin Chandler Ford, Law Offices of Kevin C. Ford, Atlanta, GA, for Plaintiff.

Michael James Walker, Office Of General Counsel-Atlanta Public Schools, Assistant General Counsel, Dwight Lowell Thomas, Office of Dwight L. Thomas, Atlanta, GA, Randall C. Farmer, Gregory, Doyle, Calhoun & Rogers, LLC, Marietta, GA, for Defendant.

## ORDER

Timothy C. Batten, Senior United States District Judge

This matter comes before the Court on the motion of Defendants Clayton County Public Schools ("CCPS"), Luvenia Jackson, and Gary Townsend (collectively, "the CCPS Defendants") for judgment on the pleadings [14]. Also before the Court is Defendant Roderick Arrington's motion to stay all proceedings [15].

## I. Background [1]

On January 5, 2014, Plaintiff S.W., then seventeen years old, enrolled at Charles Drew High School in Clayton County, Georgia. At that time, Arrington was her science teacher. From February 2014 through April 2014, Arrington sexually harassed, abused and assaulted S.W. Arrington repeatedly asked S.W. to have sex with him as part of her duties as a teaching assistant, and as repayment for his help in paying for a math class that S.W. was enrolled in. She rejected Arrington's advances, but feared he would give her a failing grade if she did not comply.

At the end of the school day on March 10, Arrington locked S.W. in a closet adjacent to his classroom for approximately 25–30 minutes while he searched the school to determine if other teachers or administrators were present. Arrington

---

1. When reviewing a motion for judgment on the pleadings, all well-pleaded facts in the complaint are taken as true. *Douglas Asphalt Co. v. Qore, Inc.,* 541 F.3d 1269, 1273 (11th Cir.2008).

then returned to the closet and forced S.W. to perform oral sex on him.

S.W. did not report the assault at the time. In late April, S.W.'s step-father discovered text messages from Arrington on S.W.'s phone that evinced an inappropriate sexual relationship. On April 21, he alerted Townsend, the principal at the high school, and notified the Clayton County Police. Townsend alerted CCPS,[2] who began an investigation into Arrington. That same day, April 21, Arrington resigned from CCPS, and was arrested. S.W. withdrew from Charles Drew High School shortly thereafter.

During CCPS's investigation, Arrington admitted to making sexual advances towards S.W., and admitted that she had performed oral sex on him. He also admitted to making inappropriate sexual comments to several other students. Arrington's arrest received immediate public attention. The criminal charges against him—including charges of sexual assault and sexual exploitation of a minor—are pending, and he is currently released on bond.

S.W. and her mother, Plaintiff Giavonia Hood, allege that the CCPS Defendants knew or should have known of Arrington's sexual harassment and assault of S.W., but that they failed to take preventative measures to protect S.W. They also allege that the CCPS Defendants knew that Arrington had been fired from another school district in 2012 because of allegations of sexual harassment and abuse. Thus, Plaintiffs claim that Defendants are liable for sexual harassment under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and for violating her civil rights under 42 U.S.C. § 1983. They plead state law claims of negligence, negligent hiring, negligent supervision, intentional infliction of emotional distress, loss of consortium, and punitive damages. Additionally, Plaintiffs state claims for false imprisonment and assault and battery against Arrington.

## II. Motion to Stay

■ A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706–07, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55, 57 S.Ct. 163.

■ As Plaintiffs note, "[a]bsent special circumstances, the mere existence of parallel criminal and civil proceedings does not compel stay of the latter." *Doe 1 v. City of Demopolis*, No. CIV A 09–0329–WS–N, 2009 WL 2059311, at *2 (S.D.Ala. July 10, 2009). Instead, "a court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" *United States v. Lot 5, Fox Grove, Alachua County, Fla.*, 23 F.3d 359, 364 (11th Cir.1994) (quoting *United States v. Kordel*, 397 U.S. 1, 12 & n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970)). District courts in this circuit typically consider some variation of the following factors when determining whether a civil action should be stayed in light of criminal proceedings:

1) the extent to which the issues in the criminal case overlap with those pre-

---

2. Jackson is the Superintendent of CCPS.

sented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest. *City of Demopolis*, 2009 WL 2059311, at *3. The overlap between the issues in the criminal and civil cases is of paramount importance because absent overlap, there is no need for a stay. *See id.* ("[T]he similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay." (quoting *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F.Supp.2d 902, 906–07 (S.D.Tex.2008))).

■ Here, there is clear overlap between the claims against Arrington and the criminal charges he faces.[3] Arrington's sexual harassment of S.W., culminating in the alleged March 10 sexual assault, forms the basis for all of Plaintiff's claims against him. That same misconduct is also the basis for most of the criminal charges against Arrington, including charges for sexual assault and sexual exploitation of a minor.[4] In short, this case and the pending criminal case will turn on the same questions concerning Arrington's misconduct toward S.W. from February through April 2014. Plaintiffs contend that the presence of other Defendants, and claims that don't include Arrington, mean that there is insufficient overlap between the civil and criminal cases. Yet for the reasons detailed in Part IV, *ante*, Arrington is situated differently from the other Defen-

dants, and resolution of the claims against him will overlap substantially with his criminal case.

■ The Court now turns to the remaining factors. Unfortunately, Plaintiffs and Arrington appear to have strong, opposing interests when it comes to the question of when and how to proceed with this case. The Court acknowledges that Plaintiffs have an interest in proceeding with their claims, and the passage of time could make it more difficult to collect evidence due to fading memories or the relocation of witnesses, among other reasons. Further, the Court has no doubt that Plaintiffs are anxious to put this matter behind them, and the public, particularly for parents in Clayton County School District, has an interest in the speedy resolution of cases such as this one.

■ On the other hand, the Court cannot ignore the potential prejudice to Arrington from allowing the criminal and civil cases to proceed at the same time. Arrington raises significant concerns about the potential effects of his Fifth Amendment rights on the proceedings in this case. "[T]he Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Baxter v. Palmigiano*, 425 U.S. 308, 316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973)). Nevertheless, "the

---

3. It is uncontested that charges have been filed against Arrington, since Plaintiffs explain in the complaint that "the criminal charges against Arrington are currently pending" and that he is currently released on bond. [1] at ¶ 47–48.

4. Arrington admits that he faces an additional criminal charge of carrying a weapon on school grounds. [15] at 2.

Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id.* at 318, 96 S.Ct. 1551. "The court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." *Lot 5,* 23 F.3d at 364.

The Court is convinced that Arrington's defense in this case will substantially implicate his Fifth Amendment rights, and that Arrington stands to lose this case on summary judgment if he invokes that right. Of paramount importance is the fact that many of the interactions between S.W. and Arrington occurred without other witnesses present. Seemingly, Arrington's only avenue to refute S.W.'s testimony will be to testify in his own defense. Otherwise, the Court will be left with unrefuted testimony from S.W., which would almost certainly lead to judgment against Arrington.

Having considered the parties' arguments, in the interests of justice and judicial economy, the Court concludes that it is appropriate for this case to be stayed with respect to Arrington. However, the Court is not inclined to grant an indefinite stay pending final resolution of the criminal proceedings. No trial date has yet been set for Arrington's criminal case. Arrington has suggested a compromise stay of 120 days to evaluate the progress of the criminal case. Such a stay would allow the parties to provide the Court with a more definite estimate of when the criminal proceedings will be resolved. Accordingly, this case will be stayed for 120 days—provided the criminal proceedings do not conclude earlier than that—at which point the parties shall file a status report with the Court, and the Court will examine whether an extension of the stay is warranted.

## III. Judgment on the Pleadings Standard

■ "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment pursuant to Rule 12(c) is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings." *Horsley v. Rivera,* 292 F.3d 695, 700 (11th Cir.2002). "A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Roma Outdoor Creations, Inc. v. City of Cumming,* 558 F.Supp.2d 1283, 1284 (N.D.Ga.2008).

When deciding a motion for judgment on the pleadings, the Court accepts factual allegations in the complaint as true and construes all reasonable factual inferences in the Plaintiff's favor. *Douglas Asphalt Co.,* 541 F.3d at 1273. However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *See Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *accord Lewis v. Brautigam,* 227 F.2d 124, 127 (5th Cir.1955). To survive a motion for judgment on the pleadings, a complaint must convey factual allegations that amount to "more than labels and conclusions" and "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## IV. Ripeness

■ Judgment on the pleadings is appropriate "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). "The pleadings are closed only when a complaint and answer have been filed." *Lillian B. ex rel.*

*Brown v. Gwinnett Cty. Sch. Dist.*, 631 Fed.Appx. 851, 853 (11th Cir.2015) (per curiam). Plaintiffs argue that it is premature for the CCPS Defendants to move for judgment on the pleadings because, although they have all filed an answer, Arrington has not. The CPPS Defendants counter that, as between Plaintiffs and themselves, the pleadings are closed.

Neither party could point to binding precedent on this issue.[5] However, the Eleventh Circuit has explained that the purpose of Rule 12(c)'s timing mechanism is so that " 'a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings.' ... When only a single pleading has been filed, 'competing pleadings' do not exist, so a motion for judgment on the pleadings is not appropriate." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir.2014) (quoting 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d ed.2004)).

 Here, there are competing pleadings for all of the relevant questions that are raised in the CCPS Defendants' motion. Thus, the Court would not be wandering in the dark, guided only by a single pleading. With respect to the CCPS Defendants, all pleadings are closed, and both the letter and spirit of Rule 12(c) have been satisfied.

Plaintiffs aver that Arrington could still assert counterclaims against Plaintiffs or cross-claims against the CCPS Defendants, and that these claims could include additional factual allegations that could sway the issues currently before the Court. This argument is unpersuasive. Nothing in any potential counterclaim or cross-claim would help the Court evaluate whether Plaintiffs have pleaded sufficient

plausible facts to state claims against the CCPS Defendants. The Court is satisfied that Arrington is situated differently from the CCPS Defendants, meaning that ruling on this motion would not be a waste of judicial resources. His alleged conduct was different in kind and flagrantly more egregious than the other Defendants, including a sexual assault perpetrated against S.W. Arrington faces claims not pleaded against the other Defendants— false imprisonment, assault and battery— and he plainly could not avail himself of the defenses of qualified immunity or sovereign immunity invoked now by the CCPS Defendants. *See* Parts V.C & VI.C, *ante*. Finally, given the Court's decision that a stay is warranted during the pendency of Arrington's criminal charges, *see* Part II, *supra*, delaying adjudication of this motion would prejudice the remaining Defendants. Thus, it is judicially efficient to resolve these issues now, rather than waiting for Arrington to answer the complaint.

## V. Claims Against Townsend and Jackson

### A. Official–Capacity Claims

The CCPS Defendants move for judgment with regard to the official-capacity claims against Townsend and Jackson, arguing that because CCPS is a named Defendant, inclusion of individuals acting in their official capacity is redundant. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government offi-

---

5. *But see Watson v. Cty. of Santa Clara*, 2007 WL 2043852, at *1 (N.D.Cal.2007) (showing that "Courts confronting the issue have generally accepted the proposition that, where an

action names multiple defendants, the pleadings are not closed until all defendants have answered," but listing certain exceptions).

cials, because local government units can be sued directly."). Plaintiffs concede this point, and thus Townsend and Jackson are entitled to judgment on all official-capacity claims.

**B. Title IX**

■■■■ "Title IX provides, in pertinent part, that '[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance....'" *Sauls v. Pierce County School Dist.,* 399 F.3d 1279, 1283 (11th Cir.2005) (quoting 20 U.S.C. § 1681(a)). "Supreme Court precedent 'has established that a teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title IX.'" *Id.* Sadly, this is not the first case of a teacher sexually harassing and assaulting a student, and such cases are sufficiently common that the Eleventh Circuit has provided clear guidance on the issue. A school district, and by extension school officials,[6] "will not be liable for damages under Title IX for teacher-on-student sexual harassment 'unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'" *Id.* at 1284 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 277, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)).

■■■ It is not clear from the complaint when Townsend or Jackson had actual notice of Arrington's misconduct. At the very least, both became aware on April 21, 2014, when S.W.'s step-father alerted Townsend to inappropriate text messages from Arrington on S.W.'s phone. However, there are no factual allegations that would establish notice on any day earlier than that. Instead, Plaintiffs offer the conclusory statement that "[b]efore April 21, 2014, Defendants had actual knowledge" of Arrington's harassment and assault of S.W., and in the alternative that they should have known before that date. [1] at ¶ 58–59, 85–86, 96–97. There are no other facts alleged in the complaint that would lead to a credible inference that Townsend or Jackson knew of Arrington's harassment and assault of S.W. prior to April 21, and merely reciting the actual notice element of a Title IX claim is not sufficient. *See Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 ([A] plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Moreover, given the *actual* notice requirement, it is irrelevant for this Title IX claim at what point school officials *should* have known of the misconduct.

Given notice on April 21, the Defendants acted swiftly. School officials began an investigation into Arrington's actions and questioned Arrington. He resigned from CCPS and was arrested that same day. Such prompt action by school officials could not constitute deliberate indifference.

Moreover, even if Townsend and Jackson had actual notice of Arrington's misconduct prior to April 21, Plaintiffs have pleaded no factual allegations regarding Townsend or Jackson prior to April 21, and thus have not pleaded any facts to support a finding of deliberate indifference. Nor can Plaintiffs establish deliberate indifference through their allegation that Townsend and Jackson failed to enforce school policies. The pleadings are

---

6. *See Davis v. DeKalb County School Dist.,* 233 F.3d 1367, 1375 (11th Cir.2000) (discussing Title IX claims without distinction between the municipality and supervisory school official defendants).

silent on the district's and school's policies concerning teacher training, supervision, and harassment prevention, meaning it is unclear what, if anything, Townsend or Jackson failed to do. The mere fact that harassment and assault occurred does not conclusively show deliberate indifference by school officials. *Sauls*, 399 F.3d at 1285 ("[A] school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective in stopping a teacher from harassing the plaintiffs." (citing *Davis*, 233 F.3d at 1375)).

This leaves Plaintiffs' final allegation that Townsend and Jackson acted with deliberate indifference by failing to institute particular safeguards around Arrington given their knowledge of his past incidents of sexual assault and harassment in other school districts. This theory of deliberate indifference has not before been recognized, and contrasts with the Eleventh Circuit's clear enunciation that there must be "actual notice before [school officials] can be held liable in damages for intentional discrimination based on sex." *Davis*, 233 F.3d at 1372 (emphasis added). Nothing in Arrington's work history, before he began teaching at Charles Drew High School and before he met S.W., could have given Defendants actual notice of Arrington's harassment and assault of S.W.[7] Moreover, this allegation echoes the contention rejected by the Supreme Court in *Gebser*, where a plaintiff sought Title IX protection "where the district knew or 'should have known' about harassment but failed to uncover and eliminate it." 524

U.S. at 282, 118 S.Ct. 1989. Thus, such allegations cannot support a claim under Title IX.

In short, Plaintiffs have failed to allege that Defendants acted with deliberate indifference upon learning of Arrington's misconduct on April 21, and even if Defendants knew before April 21, Plaintiffs have not sufficiently alleged deliberate indifference. Accordingly, Townsend and Jackson are entitled to judgment for the Title IX claims.

### C. Qualified Immunity for § 1983 Claims

▊▊▊ "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). The statute "does not in itself create federal rights, but rather provides a vehicle for asserting those rights in situations where a plaintiff was deprived of a federal right by a person acting under color of state law." *Sprauer v. Town of Jupiter*, 331 Fed.Appx. 650, 652 (11th Cir.2009) (internal punctuation omitted). Plaintiffs allege that Townsend and Jackson, acting under color of state law, deprived S.W. of her federal rights under Title IX and of her substantive due process rights under the Fourteenth Amendment. Townsend and Jackson have asserted that they are protected from this claim by qualified immunity.

---

7. The Court is aware of a minority of cases that have found Title IX liability based on knowledge of pervasive harassment, even if the defendant lacked knowledge of the harassment directed at a particular plaintiff. *See Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir.2004), *rev'd on other grounds by Trentadue v. Redmon*, 619 F.3d 648 (7th Cir.2010). However, such cases dealt with "serial harassers," where "current students were at *so* high a risk of being harassed by [defendant] that [school] officials' knowledge of the earlier episode would make them reckless for having failed to take steps to prevent a recurrence." *Id.* Plaintiff's mention of Arrington's prior employment history, without any other allegations regarding his actions at Charles Drew High School in the years preceding S.W.'s enrollment, do not approach this high standard.

"Qualified immunity protects [state actors] from § 1983 suits for civil damages arising from the discharge of their discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Douglas Asphalt Co.*, 541 F.3d at 1273. In order to claim qualified immunity, a defendant must first establish that the challenged conduct was within the scope of his or her discretionary authority. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir.2005). Once the defendant satisfies that burden, "the burden then shifts to the plaintiffs to establish a constitutional violation." *Id.*

Plaintiffs claim that Townsend and Jackson are liable under § 1983 for hiring Arrington when they knew of his prior termination for sexual harassment and assault, and failing to take precautionary steps to prevent Arrington from harassing and assaulting S.W. and other students, even after learning of the March 10 sexual assault. Moreover, Plaintiffs claim that Townsend and Jackson generally failed to enforce school policies regarding teacher supervision and training. These actions—hiring a teacher, managing the high school, enforcing school policies and training—fall squarely within the discretionary authority of a school principal and a school district superintendant, and Plaintiffs do not question this first prong of qualified immunity.

Next, a plaintiff seeking to overcome a defendant's qualified immunity privilege must show that (1) the state actor violated plaintiff's constitutional or statutory rights, and (2) those rights were clearly established at the time the state actor violated them. *Douglas Asphalt Co.*, 541 F.3d at 1273. To be clear, "[t]he question is not whether the plaintiffs have a Fourteenth Amendment substantive due process right not to be harassed or sexually abused by a teacher. They do." *Does v. Covington Cty. Sch. Bd. of Educ.*, 930 F.Supp. 554, 577 (M.D.Al.1996). Instead, the question is whether Townsend and Jackson's alleged actions violated a clearly established constitutional right.

The actions of supervisory officials can violate clearly established rights, but in cases of teacher-on-student sexual harassment, "[s]upervisory officials may not be held liable under § 1983 for the acts of their subordinates under a theory of respondeat superior or vicarious liability." *Dale v. White Cty., Ga. Sch. Dist.*, 238 Fed.Appx. 481, 483 (11th Cir.2007) (*per curiam*). The Eleventh Circuit has explained:

> [S]upervisors may be held liable under § 1983 for constitutional violations of their subordinates when a supervisor "personally participates" in the constitutional violation or when there is a "causal connection" between the supervising official's acts and the constitutional deprivation alleged. A party can establish a causal connection in several ways. First, a party can show a supervisor should have been on notice of the need to correct unconstitutional conduct by "a history of widespread abuse" that is "obvious, flagrant, rampant and of continued duration." "A causal connection can also be established by facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." In addition, a plaintiff can show a supervisor imposed an improper custom or policy that constituted deliberate indifference to constitutional rights.

*Id.* at 484 (citations omitted).

Here, there are no allegations that Townsend or Jackson participated in Arrington's abuse of S.W., or directed Arrington to do so. While the complaint alleges that Arrington repeatedly propo-

sitioned S.W. for sex, there are no allegations that his misconduct was "widespread" or "obvious, flagrant, [and] rampant." And for the reasons discussed in Part V.B, *supra*, there are insufficient allegations that Townsend or Jackson acted with deliberate indifference, much less that they had an improper custom or policy that dictated deliberate indifference.

That leaves only the possibility that a causal connection can be established where a supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (citing *Dalrymple v. Reno*, 334 F.3d 991 (11th Cir.2003)). Again, Plaintiffs have failed to plead facts that would support such a finding. Townsend and Jackson's knowledge of Arrington's misconduct prior to his employment at CCPS could constitute negligence regarding the likelihood that he would harass or abuse a CCPS student. But there are simply no allegations in the complaint that Townsend or Jackson knew Arrington would act unlawfully toward any student, let alone toward S.W. in particular.

Accordingly, Plaintiffs have failed to allege that Townsend or Jackson violated a clearly established constitutional right, meaning they are entitled to qualified immunity for the § 1983 claims.

### D. Qualified Immunity for State Law Tort Claims

■ Plaintiffs have pleaded numerous state law claims against all Defendants, including negligence, intentional infliction of emotional distress ("IIED") and loss of consortium. Townsend and Jackson assert that they are entitled to protection based on state-law qualified immunity.

■ The Georgia doctrine of qualified immunity offers limited protection to public officers and employees sued in their individual capacities. *Cameron v. Lang*, 274 Ga. 122, 549 S.E.2d 341, 344 (2001).

The doctrine "protects individual public agents from personal liability for discretionary acts taken within the scope of their official authority, and done without willfulness, malice, or corruption." *Id.* (citation and quotations omitted.) The doctrine also protects a public employee for the nonperformance of a discretionary act where the evidence shows that the act was done without actual malice or intent to cause injury in the performance of the employee's official functions. *Wendelken v. JENK LLC*, 291 Ga.App. 30, 661 S.E.2d 152, 154 (2008).

This is not quite the same as the discussion in Part V.B, *supra*, where the Court was confined to evaluate whether the defendants "ha[d] actual notice of, and [were] deliberately indifferent to, the teacher's misconduct." *Sauls*, 399 F.3d at 1284. Instead, the question is whether Townsend and Jackson acted with "actual malice."

■ "Actual malice, in the context of official immunity, means a deliberate intention to commit a wrongful or illegal act." *Tittle v. Corso*, 256 Ga.App. 859, 862, 569 S.E.2d 873, 876 (2002). It does not, however, include "implied malice," that is, "the reckless disregard for the rights or safety of others." *Murphy v. Bajjani*, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007).

Plaintiffs arguments—that Townsend and Jackson "failed to supervise, manage and monitor the school faculty" and that they "failed to adopt and enforce rules, policies, and procedures" to protect students—allege implied malice, and thus could not properly establish actual malice. At no point do Plaintiffs allege facts showing that Townsend or Jackson had a deliberate intention to allow Arrington to assault S.W., or that they intended for S.W. to be injured. As such, Plaintiffs have failed to plead that Townsend or Jackson acted with actual malice.

Accordingly, Townsend and Jackson are protected by the doctrine of qualified immunity for the state law tort claims, and are entitled to judgment on those claims.[8]

## VI. Claims Against CCPS

### A. Title IX

 Plaintiffs allege that CCPS should be held liable under Title IX for hiring Arrington despite his history of sexual misconduct and for failing to prevent Arrington's abuse of S.W.

A school district "will not be liable for damages under Title IX for teacher-on-student sexual harassment 'unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'" *Sauls*, 399 F.3d at 1284 (quoting *Gebser*, 524 U.S. at 277, 118 S.Ct. 1989). For the reasons discussed in Part V.B, *supra*, Plaintiffs have failed to allege that Townsend or Jackson acted with deliberate indifference when given actual notice of Arrington's misconduct. Moreover, there are no allegations in the complaint alleging actions by any other CCPS officials, nor that anyone else associated with CCPS had actual notice of Arrington's misconduct. Accordingly, Plaintiffs have failed to allege sufficient facts to state a Title IX claim against

CCPS, and CCPS is entitled to judgment on the pleadings.

### B. § 1983

 Similar to the Title IX claim, Plaintiffs allege that CCPS should be liable under § 1983 for failing to instruct, supervise, control or discipline Arrington, which would have prevented his abuse of S.W.

 "It is well established that municipalities, like a school district, may not be held liable under § 1983 based on a theory of *respondeat superior*. To impose liability on a municipality under § 1983, the plaintiff must identify a municipal 'policy' or 'custom' causing the deprivation of federal rights." *Sauls*, 399 F.3d at 1287 (citing *Bd. of County Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). "A plaintiff must show that the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences." *Davis*, 233 F.3d at 1375 (quoting *Brown*, 520 U.S. at 407, 117 S.Ct. 1382).[9]

 Plaintiffs have failed to adequately allege that Townsend or Jackson acted with deliberate indifference, *see* Parts V.B & V.C, *supra*, and they have not made allegations regarding any other CCPS offi-

8. Defendants also argued the merits of the IIED claim. However, because Townsend and Jackson are entitled to qualified immunity for all state law claims, the Court need not reach the merits of those arguments.

9. *See also Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1313 (11th Cir.2001) (using deliberate indifference standard for municipality hiring decision); *Doe v. Bibb Cty. Sch. Dist.*, 83 F.Supp.3d 1300, 1309 n. 14 (M.D.Ga.2015) (applying deliberate indifference standard when municipality is on notice of a training policy that "causes city employees to violate

citizens' constitutional rights"); *Hackett v. Fulton Cty. Sch. Dist.*, 238 F.Supp.2d 1330, 1365 (N.D.Ga.2002) ("[P]laintiff must establish: (1) the existence of a clear and persistent pattern of sexual abuse by school employees; (2) notice or constructive notice of the abuse to the school district or school board; (3) the school district's tacit approval of the conduct, *or deliberate indifference* from their failure to correct the problem; and (4) that the school district's failure to act was the 'moving force' behind the violation of the plaintiff's constitutional rights." (emphasis added))

cials. Mere recitation of the elements of the claim, *see* [1] at ¶ 72–79, is insufficient to state a plausible cause of action. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Accordingly, there are insufficient factual allegations to establish deliberate indifference for purposes of § 1983. *Accord Sauls*, 399 F.3d at 1288 (dismissing § 1983 claim where Plaintiff failed to establish that "officials were deliberately indifferent to the reports of alleged [teacher] misconduct"). CCPS is entitled to judgment on the § 1983 claim.

### C. Sovereign Immunity for State Law Claims

██ In addition to the federal Title IX and § 1983 claims against CCPS, Plaintiffs have alleged state law claims of negligence, negligent hiring, negligent supervision, IIED, and loss of consortium. CCPS asserts that it is entitled to the protection of sovereign immunity, and thus the Court lacks subject matter jurisdiction over these state law claims. Plaintiffs did not respond to CCPS's claim of sovereign immunity, and on that ground alone it could be granted. *See Hudson v. Norfolk S. Ry. Co.*, 209 F.Supp.2d 1301, 1324 (N.D.Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995))).

██ Regardless, CCPS's argument is well taken. A school district is a political subdivision of the State of Georgia and can avail itself of sovereign immunity. *Coffee Cty. Sch. Dist. v. Snipes*, 216 Ga. App. 293, 454 S.E.2d 149, 150 (1995). "[T]he sovereign immunity of the state and its departments and agencies can be waived only by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of the waiver." *Welborn v.*

*DeKalb Cty. Sch. Dist.*, 227 Ga.App. 377, 489 S.E.2d 345, 379 (1997). Plaintiffs have pointed to no waiver of sovereign immunity that would cover CCPS, and thus CCPS is entitled to judgment on Plaintiffs' state law claims. *Accord Davis v. DeKalb Cty. Sch. Dist.*, 996 F.Supp. 1478, 1484 (N.D.Ga. 1998) ("The Georgia Tort Claims Act provides for a limited waiver of the state's sovereign immunity for the torts of its officers and employees, but it expressly excludes school districts from the waiver. Therefore, the Georgia Tort Claims Act does not divest the School District of its sovereign immunity.") (citations omitted).

### VII. Punitive Damages and Attorneys' Fees

██ The CCPS Defendants assert on the merits why they should not be liable for punitive damages, and assert in a footnote that they should not be liable for attorneys' fees. However, the Court need not reach the merits of those arguments. "An award of attorney fees, costs, or punitive damages is derivative of a plaintiff's substantive claims." *Stephen A. Wheat Trust v. Sparks*, 325 Ga.App. 673, 754 S.E.2d 640, 682 (2014); *see also Anderson v. Dunbar Armored, Inc.*, 678 F.Supp.2d 1280, 1334 (N.D.Ga.2009) ("[P]unitive damages claims are derivative of the underlying claims"). Because the CCPS Defendants are entitled to judgment on the underlying claims, they are also entitled to judgment on the punitive damages and attorneys' fees claims.

### VII. Conclusion

Accordingly, the CCPS Defendants' motion for judgment on the pleadings [14] is granted. Because Townsend, Jackson and CCPS are entitled to judgment on all claims asserted against them, they are hereby dropped from this action. Arrington's motion to stay all proceedings [15] is granted. This case is stayed for 120 days,

or until Arrington's criminal proceedings are resolved, whichever is earlier. At the end of that period, the parties are directed to file a status update concerning Arrington's criminal proceedings, at which point the Court will determine whether the stay should be extended.

IT IS SO ORDERED this 12th day of May, 2016.