PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------
No. 96-9448
-------------------------------------------
D. C. Docket No. 1:95-CR-275-1-JTC


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD M. DICTER, M.D.,

Defendant-Appellant.

------------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
------------------------------------------------------------------
**(December 23, 1999)**


Before EDMONDSON and BIRCH, Circuit Judges, and OWENS*, Senior District Judge.

_____

\*      Honorable Wilbur D. Owens, Jr., Senior U.S. District Judge for the Middle District of Georgia, sitting by designation


EDMONDSON, Circuit Judge:

Defendant, Richard M. Dicter, M.D., appeals his convictions and sentence for conspiring to distribute unlawfully controlled substances and unlawfully distributing controlled substances, in violation of 21 U.S.C. § 841. Defendant also appeals the forfeiture of his state medical license under 21 U.S.C. § 853. We affirm.

BACKGROUND

Defendant, an Atlanta physician, began selling prescriptions to Ronnie Gullett ("Gullett") in February 1992. At that time, Defendant visited Gullett's car wash, where Gullett told Defendant that he suffered from chronic back pain. Gullett also told Defendant that he previously had taken Percodan for the pain. Defendant offered to "help" Gullett with his pain: Gullett paid Defendant $100, and Defendant wrote a Percodan prescription for Gullett.

Thereafter, Defendant regularly prescribed various controlled substances for Gullett. Defendant prescribed Percodan, Percocet, Fiorinal, Vicodin ES, and Darvocet-N 100 for Gullett.[1] Defendant issued prescriptions for Gullett on 230 occasions. Some of these prescriptions were written in Gullett's name; others

---

[1]Percodan and Percocet are schedule II controlled substances. Fiorinal and Vicodin ES are schedule III controlled substances. Darvocet-N 100 is a schedule IV controlled substance.

2

purported to prescribe controlled substances for Gullett's friends and relatives.

Regardless of the names on the prescriptions, however, the controlled substances

went to Gullett. On several occasions, Defendant phoned-in prescriptions to a

pharmacist, later following up with a written prescription. Gullett generally paid

between $100 and $500 for each prescription; on multiple occasions, Gullett paid

$500 for a prescription.

Defendant eventually attracted the attention of investigators from the

Georgia Secretary of State's Office. In 1993 and early 1994, the investigators

subpoenaed from Defendant the medical records of ten persons, friends and

relatives of Gullett and Gullett himself, to whom Defendant purportedly had

written prescriptions. Defendant enlisted Gullett's assistance in obtaining

information about the ten "patients" to create medical charts for those persons in

response to the subpoenas. Defendant eventually responded to the subpoenas by

submitting fabricated and fraudulent medical records to investigators.[2]

Defendant was indicted for one count of conspiring to distribute unlawfully

controlled substances and two hundred-thirty counts of unlawfully distributing

controlled substances, in violation of 21 U.S.C. § 841(a)(1). At trial, an expert

---

[2]Many of Defendant's alleged "patients" testified at trial that they had never been examined by Defendant and that they had never received prescriptions from Defendant.

3

Government witness testified that Defendant's prescriptions for Gullett were not written in the course of legitimate medical treatment. A jury convicted Defendant on all counts. The jury then found that Defendant's state medical license was forfeited to the Government under 21 U.S.C. § 853(a)(2). The district court accordingly ordered Defendant's medical license forfeited and imposed sentence upon Defendant: 42 months' imprisonment; a $1500 fine; and an $11,550 special assessment.[3] Defendant appeals his convictions, his sentence, and the forfeiture of his medical license.

DISCUSSION

Defendant contends, first, that his conviction must be reversed

---

[3]A later order of the district court, clarifying the sentence, provides that the balance of financial penalties, unpaid upon Defendant's release from prison, are to be paid at a rate of $100 per month. The order also provides that "[t]o whatever extent possible, [D]efendant shall begin paying restitution while incarcerated." Because the district court never ordered Defendant to pay restitution, but only ordered Defendant to pay a fine and special assessment, we construe the order to render Defendant's financial penalties due immediately, with payment (to the extent possible) required while Defendant is incarcerated and with payment of the balance at a rate of $100 per month after Defendant's release.

because the district court violated Defendant's confrontation rights by improperly limiting his cross-examination of the Government's witnesses.[4] Defendant contends,

---

[4]In particular, Defendant claims that the district court erroneously did not permit him to (1) impeach Ronnie Gullett with statements made by a state court judge at a probation hearing; (2) impeach Gullett with Gullett's prior statement that he falsely would deny having undergone drug rehabilitation at an Atlanta clinic; (3) introduce evidence that Defendant's purported "patients" had also received various prescriptions from other physicians; (4) cross-examine the Government's expert about the propriety of prescribing Percodan for one of Defendant's purported "patients"; (5) cross-examine Gullett's wife about her use of a false identity during Gullett's drug treatment; and (6) cross-examine Gullett's wife about the Gulletts' banking statement.

Defendant's last three claimed errors are belied by the record; the district court, in fact, permitted the cross-examination that Defendant claims was denied. The district court's refusal to allow Defendant to introduce statements -- made by a state court judge, about Gullett's propensity for truthfulness -- was not error. See Trustees of the Univ. of Penn. v. Lexington Insur. Co., 815 F.2d 890, 904-05 (3d Cir. 1987). Nor was the district court's exclusion of Gullett's prior statement that he *would* deny having received drug treatment. See Fed. R. Evid. 401. Even if the exclusion of either matter was erroneous under evidentiary rules, it did not violate Defendant's confrontation rights because Defendant had sufficient opportunity to impeach Gullett's testimony. See United States v. Garcia, 13 F.3d 1464, 1468 (11th Cir. 1994).

Defendant also sought to introduce pharmacy records indicating that Gullett had received Percodan (and other drugs) from other doctors. Although the district court refused to admit such evidence during the Government's case-in-chief, Defendant was permitted to cross-examine Gullett extensively about receiving prescriptions from other doctors. Therefore, the district court's refusal to allow introduction of the

5

second, that his sentence must be vacated because the district court improperly delegated scheduling of his fine and special assessment payment to the Bureau of Prisons.[5] These contentions lack merit; we reject them without extended discussion and affirm Defendant's convictions and sentence.

Defendant also challenges the forfeiture of his state medical license. In particular, Defendant asserts that: (1) the district court improperly permitted an eleven-person jury to return the forfeiture verdict; (2) the district court erroneously instructed the jury that the elements of forfeiture must be proven by a preponderance of the evidence; (3) Defendant's medical license is not property subject to forfeiture under 21 U.S.C. § 853(a)(2); (4) the forfeiture of Defendant's medical license required compliance with state administrative procedures governing the revocation of a license by the Georgia medical licensing board; (5) the district court's conduct of forfeiture proceedings, while the state licensing board was investigating the revocation of

pharmacy records was not error. See id.

[5]The setting of Defendant's fine and the setting of a payment schedule were not improperly "delegated" to prison officials. We believe the district court's original sentence and clarifying order made clear Defendant's fine, special assessment, and payment obligations. See supra note 3 and accompanying text. Therefore, the district court delegated no sentencing authority to prison officials. See McGhee v. Clark, 166 F.3d 884, 886 (7th Cir. 1998); Montano-Figueroa v. Crabtree, 162 F.3d 548, 550 (9th Cir. 1998).

Defendant's medical license, violated the <u>Younger</u> abstention doctrine; (6) the forfeiture of Defendant's medical license violates the Tenth Amendment; and (7) the forfeiture of Defendant's medical license violates the Eighth Amendment. We reject Defendant's contentions and, accordingly, affirm the district court's order of forfeiture.

1.     ELEVEN-PERSON JURY

Defendant notes that the district court dismissed one of the twelve jurors, so that the juror could attend a job-training session, during forfeiture deliberations. Defendant contends that the district court's decision to proceed with a forfeiture jury of eleven jurors was without "just cause" and violated Fed. R. Crim. P. 23(b). Defendant, however, raised this issue for the first time in his reply brief. Defendant, therefore, has waived this claim.[6] <u>McGinnis v. Ingram Equip. Co., Inc.</u>, 918 F.2d 1491, 1496 (11th Cir. 1990).

---

[6]Defendant says that his failure to raise this issue in his initial brief should be excused because the meaning of "just cause" under Rule 23(b) was unclear before our decision in <u>United States v. Spence</u>, 163 F.3d 1280 (11th Cir. 1998), issued after Defendant filed his initial brief. We note, however, that the <u>Spence</u> panel merely applied the construction of Rule 23(b) set forth in <u>United States v. Wilson</u>, 894 F.2d 1245 (11th Cir. 1990). Because <u>Wilson</u> was available to Defendant when he filed his initial brief, we decline to excuse Defendant's waiver of this issue. See <u>McGinnis</u>, 918 F.2d at 1496.

## 2.    BURDEN OF PROOF IN FORFEITURE PROCEEDINGS

Defendant contends that the district court erred by instructing the jury that the Government need only prove the elements of criminal forfeiture under 21 U.S.C. § 853(a)(2) by a preponderance of evidence.  Defendant asserts that the Government, instead, must prove the elements of the forfeiture beyond a reasonable doubt.  We disagree; we conclude that the preponderance standard defines the Government's burden of proof in section 853(a)(2) forfeitures.

First, the preponderance standard is most consistent with the notion that section 853(a)(2) forfeiture is a matter of sentencing.  The Supreme Court has said that "[f]orfeiture is an element of sentence imposed following conviction." Libretti v. United States, 116 S. Ct. 356, 363 (1995).  The language of section 853(a) itself makes clear that its forfeiture provisions are elements of sentencing.  See 21 U.S.C. § 853(a) (providing that court shall order forfeiture "in addition to any other sentence imposed").  Operating to deprive a convicted defendant of "any of [his] property used, or intended to be used, in any manner or part, to commit, or to facilitate" the defendant's crime, section 853(a)(2) is purely for sentencing:  "The forfeiture is not intended to rectify the unjust enrichment of the individual, but to punish the defendant . . . ." United States v. DeFries, 129 F.3d 1293, 1315 (D.C.

8

Cir. 1997).  The preponderance standard ordinarily governs sentencing matters.

United States v. Barakat, 130 F.3d 1448, 1452 (11th Cir. 1997).

In addition, in United States v. Elgersma, 971 F.2d 690, 697 (11th Cir. 1992) (en banc), we decided that the preponderance standard applies in section 853(a)(1) forfeitures.[7]  The statutory language reveals no congressional intent to require a higher standard of proof for section 853(a)(2) forfeitures than for section 853(a)(1) forfeitures.  See United States v. Bieri, 21 F.3d 819, 822 (8th Cir. 1994).  Furthermore, we see "no principled distinction between the two types of forfeitable property that would justify a higher burden of proof to forfeit property used to facilitate a drug crime than is required to forfeit property acquired with drug proceeds."  See id.

We, therefore, conclude that the preponderance standard governs forfeitures under § 853(a)(2).[8]

---

[7]We expressly declined, in Elgersma, to "reach the question of which standard applies to forfeiture under sections 853(a)(2) and (3)."  971 F.2d at 697 n.20.

[8]We follow the First, Fourth, Sixth, and Eighth Circuits.  See United States v. Rogers, 102 F.3d 641, 648 (1st Cir. 1996); United States v. Tanner, 61 F.3d 231, 235 (4th Cir. 1995); United States v. Smith, 966 F.2d 1045, 1052 (6th Cir. 1992); United States v. Bieri, 21 F.3d 819, 822 (8th Cir. 1994).  Our conclusion, that the preponderance standard applies under § 853(a)(2), is also consistent with the Third and Seventh Circuits, which have said that the preponderance standard applies generally to section 853(a) forfeitures.  See United States v. Sandini, 816 F.2d 869, 875-76 (3d Cir. 1987); United States v. Herrero, 893 F.2d 1512, 1542 (7th Cir. 1990).

### 3. FORFEITABILITY OF DEFENDANT'S MEDICAL LICENSE UNDER § 853(a)(2)

Defendant claims that his state medical license is not forfeitable under 21 U.S.C. § 853(a)(2). In this regard, Defendant asserts that his license is not "property" within the meaning of section 853.[9] We cannot agree.

Defendant's contention is belied by the plain language of section 853. Property subject to forfeiture under section 853 includes "tangible and *intangible* personal property, *including rights,* privileges, interests, claims, and securities." 21 U.S.C. § 853(b)(2) (emphasis added). A Georgia medical license confers "the right to practice medicine in [the] state" upon the licensee. O.C.G.A. § 43-34-27(a)(1). Defendant's medical license, therefore, constitutes "property" for the purposes of section 853.

---

[9]In a related contention, Defendant also asserts that his state medical license did not "facilitate [his] commission of unlawfully distributing controlled substances." First, Defendant affirmatively waived this argument at trial. Defendant's counsel argued to the jury: "For me to argue at this point in light of what you have found that [Defendant's license] did not facilitate would be insulting, and I don't intend to do that."

And, this contention is simply wrong. Defendant was able to write prescriptions for controlled substances because he held a DEA registration permitting him to do so for legitimate medical reasons. Defendant was able to obtain the DEA registration because he was a licensed medical practitioner in Georgia. Defendant's medical license, therefore, was essential to his ability to provide Gullett with controlled substances. As such, that Defendant's medical license "facilitated" his commission of the charged crimes seems clear. See United States v. Rivera, 884 F.2d 544, 546 (11th Cir. 1989) (adopting broad interpretation of "facilitate" under § 853).

Our conclusion that Defendant's medical license constitutes "property" under section 853 is confirmed by Georgia law.  See United States v. Shotts, 145 F.3d 1289, 1294-95 (11th Cir. 1998) (looking to state law to determine whether state-issued license is "property" under mail fraud statute).  Under Georgia law, a state-issued license "to engage in a profession, trade, or occupation" is a property right.  See Leakey v. Georgia Real Estate Comm., 55 S.E.2d 818, 819 (Ga. Ct. App. 1949).  The Georgia Supreme Court has noted:  "The right to practice medicine is . . . a valuable property right."  Yeargin v. Hamilton Memorial Hosp., 171 S.E.2d 136, 139 (Ga. 1969).

4.    GEORGIA PROCEDURES FOR REVOCATION OF A MEDICAL LICENSE

Georgia law mandates certain procedures for the revocation of a medical license by the state medical licensing board.  See O.C.G.A. § 43-34-38.  Defendant contends that the district court was required to abide by these state law procedures in forfeiting Defendant's medical license because the forfeiture, in effect, operates as a revocation of Defendant's license.  This contention is without merit.  Under 21 U.S.C. § 853, Defendant's medical license is forfeitable to the Government "irrespective of any provision of State law."  21 U.S.C. § 853(a).  In the light of the clear language of section 853, the district court was not required to implement the

11

procedures set out by state law to forfeit Defendant's medical license. See

generally, American Manuf. Mut. Insur. Co. v. Tison Hog Market, Inc., 182 F.3d

1284, 1287 (11th Cir. 1999) (discussing Supremacy Clause).

Nonetheless, we need not rest our decision on preemption grounds because,

in this case, no conflict exists between the Georgia administrative scheme and this

criminal forfeiture. O.C.G.A. § 43-34-38 is inapplicable to this forfeiture by its

own terms. The Georgia statute does not purport to govern proceedings in the

courts; it specifically governs only "[p]roceedings *before the board* wherein a

licensee's right to practice medicine in this state is terminated, suspended, or

limited." O.C.G.A. § 43-34-38 (emphasis added).

## 5. YOUNGER ABSTENTION

Defendant, citing Younger v. Harris, 91 S. Ct. 746 (1971), also contends

that, because state licensing officials were investigating Defendant's conduct at the

time of Defendant's trial, the district court should have abstained from the

forfeiture of Defendant's state medical license. The Younger doctrine ordinarily

requires federal district courts to refrain from enjoining pending state criminal or

quasi-criminal proceedings.  Old Republic Union Insur. Co. v. Tillis Trucking Co., Inc., 124 F.3d 1258, 1261 (11th Cir. 1997).

Younger, however, is inapplicable to the instant case.   This case is not one where a state-court defendant comes to federal court seeking equitable relief against a state-court proceeding; this case is a direct, federal criminal prosecution. See United States v. Composite State Bd. of Med. Exam'rs, 656 F.2d 131, 134 (5th Cir. 1981) ("[A]bstention is inappropriate when, as here, the United States is seeking to assert a federal interest against a state interest.").


6.    TENTH AMENDMENT


Defendant also argues that the forfeiture of his medical license violates the Tenth Amendment.  Defendant says:  (1) the State of Georgia has the "power to control medical licensing" of Georgia physicians; (2) the forfeiture of Defendant's medical license prohibits the Georgia medical licensing board from re-licensing Defendant; (3) the forfeiture, therefore, violates the Tenth Amendment by depriving the state of its power to license Defendant.  We find Defendant's argument uncompelling.

13

The State of Georgia has a powerful interest in controlling the licensing of physicians practicing in Georgia. Nonetheless, we do not see how the forfeiture of Defendant's medical license prohibits the state licensing board from regulating Defendant's practice of medicine in Georgia. The district court simply ordered the forfeiture of a definite thing, a *particular* medical license: the medical license held by Defendant and "issued by the Georgia Composite Board of Medical Examiners." The district court's order of forfeiture does not purport to forfeit any other medical license, including one that might be issued to Defendant by the Georgia medical licensing board in the future.

Furthermore, Defendant's license was forfeited on the ground that it was "used . . . to facilitate the commission of" Defendant's unlawful distribution of controlled substances from 1992 through 1994. See 21 U.S.C. § 853(a)(2). Any license that might be issued in the future (but has not yet been issued, and certainly was not in existence between 1992 and 1994) could not have facilitated the Defendant's unlawful distribution of controlled substances. Therefore, any such future license was not forfeited to the United States. Whether the Georgia medical licensing board is authorized to issue another, *different medical license* to Defendant in the future is an issue solely of Georgia law.[10] The Georgia board's

---

[10]See O.C.G.A. § 43-34-21 (providing for appointment of

14

power is unaffected by this forfeiture. Defendant's Tenth Amendment contention, therefore, lacks merit.

### 7. EIGHTH AMENDMENT

Defendant asserts that the forfeiture of his medical license constitutes an excessive fine in violation of the Eighth Amendment. "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." United States v. Bajakajian, 118 S. Ct. 2028, 2036 (1998).

---

Composite State Board of Medical Examiners); O.C.G.A. § 43-34-24.1(d) (providing that "[l]icenses issued by the board which are subject to renewal *shall be valid for up to two years* and shall be renewable biennially on the renewal date established by the board") (emphasis added). See also O.C.G.A. § 43-34-37(c), which provides: "In its discretion, the board may restore and reissue a license to practice medicine issued under this chapter or any antecedent law and, as a condition thereof, may impose any disciplinary or corrective measure provided in this chapter."

The "license to practice medicine issued under this chapter" to Defendant has been forfeited; so, it, strictly speaking, cannot be "restored" or "reissued." We, however, offer no opinion on whether O.C.G.A. § 43-34-37(c), or any other Georgia statutory provision, authorizes the Georgia medical licensing board to issue *another, different* license to Defendant under some circumstances. That is a question of Georgia law, and it is a question that is not now before this court.

"[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature." Id. at 2037. Therefore, we look to the maximum fine for Defendant's offenses, as prescribed by Congress and the United States Sentencing Commission (USSC), in determining whether the instant forfeiture is excessive. If the value of the forfeited property is "within the range of fines" authorized by Congress and the USSC, "a strong presumption arises that the forfeiture is constitutional." United States v. 817 N.E. 29th Dr., Wilton Manors, Florida, 175 F.3d 1304, 1309-10 (11th Cir. 1999).

Defendant's crimes involved the prescribing of more than 2 million milligrams of Percodan, a schedule II drug (the equivalent of more than 1100 kilograms of marijuana). See U.S.S.G. § 2D1.1 (setting out drug equivalency conversion factors). Defendant was convicted of more than 200 counts of unlawfully distributing schedule II drugs. Congress and the USSC have prescribed severe monetary penalties for a defendant convicted of so many violations of 21 U.S.C. § 841(a), involving the unlawful distribution of such quantities of schedule II controlled substances. See 21 U.S.C. § 841(b)(1)(C) (providing for $1 million fine for violation of section 841(a) involving schedule II controlled substances); see also U.S.S.G. § 5E1.2(c)(4). In the light of the severe penalties for violation of 21 U.S.C. § 841, the large quantities of drugs involved in this case, and

16

Defendant's repeated unlawful conduct, we cannot say that the forfeiture of his medical license is grossly disproportionate to the gravity of his crimes.[11] Defendant's Eighth Amendment argument, therefore, fails.

CONCLUSION

We AFFIRM Defendant's convictions and sentence. We also specifically AFFIRM the forfeiture of Defendant's state medical license.

AFFIRMED.

---

[11]Defendant urges that the forfeited medical license "represents his entire livelihood." We doubt that the forfeiture of Defendant's medical license renders Defendant completely unable to earn a living; most people earn a living without a medical license. More important, we do not take into account the personal impact of a forfeiture on the specific defendant in determining whether the forfeiture violates the Eighth Amendment. 817 N.E. 29th Dr., Wilton Manors, Florida, 175 F.3d at 1311.

17