[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12634
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00251-JOF-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CEDRIC LAMONT ROBINSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 19, 2013)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Cedric Lamont Robinson appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), arguing that the search that ultimately resulted in his conviction violated his Fourth Amendment rights.  A parole officer visited Robinson, who was on parole after being convicted of several controlled substance offenses and robbery by intimidation, to conduct a "compliance check," which included a search of Robinson's bedroom.  The officers conducting the search found two guns under pillows on Robinson's bed. Robinson's parole certificate, which Robinson signed, included a provision that stated that a "parole officer or any other officer may at any time conduct a warrantless search of [his] person, papers, and place of residence, automobile, or any other property under [his] control."  On appeal, Robinson argues that the officers were required to have reasonable suspicion to conduct the search because (1) he had not agreed to suspicionless searches as a condition of his parole, and (2) a policy in the Georgia State Board of Pardons and Paroles' Field Operations Manual ("Field Operations Manual") required a parole officer to have both reasonable suspicion and the permission of the chief parole officer before conducting a search.

The district court made two findings in concluding that Robinson's Fourth Amendment rights were not violated:  (1) pursuant to Samson v. California, 547 U.S. 843, 126 S. Ct. 2193 (2006), the warrantless search of Robinson's apartment

2

did not violate the Fourth Amendment regardless of whether the officers had reasonable suspicion; and (2) alternatively, the search did not violate the Fourth Amendment because the officers had reasonable suspicion to search Robinson's apartment.

Because we affirm on the basis of the district court's alternative holding—that the officers had reasonable suspicion to search Robinson's apartment—we need not address the Sampson issue, and we need not decide whether a warrantless search without reasonable suspicion would violate Robinson's Fourth Amendment rights. In affirming this alternative holding of the district court, we ourselves rely upon two alternative holdings.

First, the district court clearly held, in its alternative holding, that the officers had reasonable suspicion to search Robinson's apartment. Despite this clear holding, Robinson's initial brief on appeal fails to challenge the district court's finding that there was reasonable suspicion for the search.[1] Accordingly, his subsequent argument in his reply brief that the district court erred in making this

---

[1]    The sole issue identified in Robinson's initial brief is the Sampson issue. Both of the two headings in that brief address only the Sampson issue. Nowhere in that brief does Robinson address the facts upon which the district court relied in finding reasonable suspicion and argue that those facts do not rise to the level of reasonable suspicion. See, e.g., United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) (finding that a party that had not argued an evidentiary issue in its brief but had only made "four passing references" to the issue in headings had waived the argument); Univ. of Alabama Bd. of Trustees v. New Life Art, Inc., 683 F.3d 1266, 1280 n.41 (11th Cir. 2012) (finding that a party waived an argument when, inter alia, the party only made a "bald and conclusory statement" in the the summary of the argument and did not expand on this statement anywhere else in the initial brief).

3

finding is waived.  Issues and arguments raised for the first time in a reply brief are deemed waived.  See United States v. Dicter, 198 F.3d 1284, 1289 (11th Cir. 1999) (citing McGinnis v. Ingram Equip. Co., Inc., 918 F.2d 1491, 1496 (11th Cir. 1990) (holding that a defendant waives a claim that he raises for the first time in his reply brief)).  Because Robinson thus failed to challenge this alternative holding of the district court, and because it is a separate and independent basis for upholding the judgment of the district court, we enforce the waiver and affirm on this ground.

Alternatively, we address the merits of the reasonable suspicion issue and conclude that the district court correctly held that the officers had reasonable suspicion to search Robinson's apartment.  Reasonable suspicion consists of a "sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy reasonable."  United States v. Knights, 534 U.S. 112, 121, 122 S. Ct. 587, 592 (2001).  Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene.  Ornelas v. United States, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661-62 (1996).  It is based on the totality of the circumstances, Garrett v. Athens-Clarke Cnty., 378 F.3d 1274, 1279 (11th Cir. 2004), and is a question of law to be reviewed de novo.  Ornelas, 517 U.S. at 696-97, 116 S. Ct. at 1662.

Here, the totality of the circumstances demonstrate that there was a sufficiently high probability that criminal conduct was occurring at the time of the

4

search.  Parole Officer Taneshia Sims testified that she reviewed Robinson's parole file when she took over as his parole officer.  A review of his parole file would have showed multiple parole violations, including that Robinson had moved without permission a few months before the search and that he had failed three drug tests while on parole, with the most recent failed drug test coming approximately two months prior to the search.  The Field Operations Manual states, inter alia, that a positive drug test is sufficient to constitute reasonable suspicion.  From March 2010 until the time of the search in December 2010, Robinson did not pay the $30-per-month supervision fee required as a special condition of his parole.  Additionally, at the time of the search, Sims was aware of Robinson's previous drug-related and gun-related crimes.  See United States v. Yuknavich, 419 F.3d 1302, 1311 (11th Cir. 2005) (indicating that officers' knowledge of an individual's past criminal convictions is relevant in determining whether the officers had reasonable suspicion of criminal activity).

In his reply brief, Robinson argues that reasonable suspicion did not exist because Sims never testified that she conducted the search based on reasonable suspicion of criminal activity and that she in fact believed that reasonable suspicion was not necessary to justify her search.  However, whether reasonable suspicion existed is an objective test, and an officer's subjective intentions or beliefs are immaterial.  See Evans v. Stephens, 407 F.3d 1272, 1280 n.9 (11th Cir.

5

2005) (noting that an officer's "subjective intentions and beliefs . . . are immaterial to the Fourth Amendment analysis." (citing Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989))); see also id. ("Ulterior motives will not make an otherwise lawful search unlawful.").  We agree with the district court that the officers had reasonable suspicion of criminal activity to justify the search of Robinson's apartment.  Accordingly, we affirm.

AFFIRMED.