[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17797
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00203-ODE-AJB-1


UNITED STATES OF AMERICA,

                                                                 Plaintiff-Appellee,

versus

CHENHSIN CHAN,
a.k.a. Paul Chan,

                                                                 Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 4, 2018)

Before ED CARNES, Chief Judge, TJOFLAT, and NEWSOM, Circuit Judges.

PER CURIAM:

A jury convicted Chenhsin Chan of ten counts of mail fraud, 18 U.S.C. §§ 1341 and 2, ten counts of introducing adulterated food into interstate commerce, id. §§ 331(a) and 333(a)(2), five counts of distributing a listed chemical, 21 U.S.C. § 841(f)(1) and 18 U.S.C. § 2, and five counts of money laundering, id. §§ 1957 and 2.  All of those counts relate to a seven year scheme through which Chan made millions selling dietary supplements containing ephedrine.  The jury returned a special verdict finding certain assets forfeitable, including several rare gold coins, a Lamborghini, a house in New York, and $666,000 cash.  The district court sentenced Chan to 135 months and ordered him to forfeit specified assets.  Chan appeals his convictions and sentence.

## I.

In 2004 the Food and Drug Administration banned dietary supplements containing ephedrine by deeming them "adulterated foods."  21 C.F.R. § 119; see 21 U.S.C. § 331(a) (prohibiting introduction of adulterated foods into interstate commerce).  Because ephedrine can be used to make methamphetamine, it is a "list I" chemical, 21 U.S.C. § 802(34)(C), and anyone seeking to distribute it must get authorization from and register with the Drug Enforcement Agency, id. § 823(h).

At trial the government presented evidence that from 2005 to 2012 Chan operated a website that sold dietary supplements containing ephedrine. Testimony showed that Chan never registered with the DEA and received warnings that it was

2

illegal to sell supplements containing ephedrine.  An FDA investigator testified that in 2005 he told Chan that the FDA had adopted a rule banning supplements containing ephedrine.  Chan told the investigator that he thought the FDA rule was suspended because a Utah district court ruled that it exceeded the FDA's statutory authority.  The investigator told Chan that the FDA rule remained in effect.

Despite that warning, Chan continued to sell supplements containing ephedrine.  His source was a company called Hi-Tech Pharmaceuticals.  Hi-Tech employees testified that the company stopped producing supplements containing ephedrine in 2006 but continued to sell leftovers to Chan.  One employee sold Chan supplements containing ephedrine in 2009.  That employee knew the supplements were banned in the United States but thought they could be exported, so he put a notice to that effect in each shipment.  Another employee said that he told Chan that the supplements were banned after seeing them on Chan's website.

Chan kept selling supplements containing ephedrine until August 2012, when federal agents executed a search warrant on Chan's parents' home and seized more than 100 boxes of supplements.  They also executed a search warrant on Chan's car and seized supplements and incorporation records for the company through which Chan sold those supplements.  Two FDA chemists testified that several seized supplements tested positive for ephedrine.

3

A fraud examiner who reviewed Chan's bank records testified that he had deposited into his account more than $11 million from website sales. The examiner testified that Chan withdrew funds from that account to purchase a Lamborghini, a Mercedes Benz, a house in New York, and several rare gold coins.

An FDA agent testified that Chan used a system called CartManager to process credit card payments for website purchases. The agent isolated sales figures for dietary supplements containing ephedrine and concluded that Chan received in excess of $4.5 million from selling supplements containing ephedrine.

The agent also testified about statements that Chan published on his website about the legality of ephedrine. He introduced screen captures of the website from 2005 to 2012, one of which stated that "[t]he FDA has approved the use of Ephedrine . . . for the treatment of asthma, colds, allergies, or any other disease." Another, titled "Is Ephedra legal," stated:

> Let me answer that question by saying that ephedrine has never been illegal. It is legal to purchase ephedrine both natural and synthetic (Ephedrine HCL made by Vasopro) for its intended use which is a decongestant and bronchodilator. It will also provide energy, appetite suppression and increase your metabolism which leads to weight loss. It will also increase your blood pressure so do not take it with any blood pressure medication, antidepressants or if you have a history of heart disease. Read all warnings before using and consult with your physician before use.

The agent testified that those statements were false and misleading because Chan's website sold only dietary supplements, not bronchodilators or decongestants.

Several customers testified that they bought dietary supplements containing ephedrine from Chan's website and that they believed those supplements were legal to sell and safe to use. Some customers testified that they experienced adverse effects from the supplements, including headaches, anxiety, and nausea.

The jury ultimately convicted Chan of all 30 counts, which yielded a guidelines range of 262 to 327 months imprisonment. The district court varied downward and sentenced him to 135 months. It also ordered him to forfeit assets obtained by the fruits of his offenses. This is Chan's appeal.

## II.

Chan raises six issues on appeal. We address each in turn.

## A.

Chan contends that the evidence was insufficient to sustain the mail fraud convictions. We review de novo the sufficiency of the evidence, viewing the evidence and drawing all inferences from it in favor of the verdict. United States v. Isaacson, 752 F.3d 1291, 1303 (11th Cir. 2014). Chan did not preserve this issue, so we will not disturb the verdict unless failure to do so would result in a miscarriage of justice. United States v. Tapia, 761 F.2d 1488, 1491 (11th Cir. 1985).

Chan argues that the government failed to prove "an intentional participation in a scheme to defraud." United States v. Smith, 934 F.2d 270, 271 (11th Cir.

5

1991).  He asserts that his mail fraud convictions cannot stand because the government did not prove that his customers relied on his false and misleading statements.  But reliance is not an element of mail fraud.  See United States v. Clay, 832 F.3d 1259, 1309 (11th Cir. 2016).

Relying on United States v. Takhalov, 827 F.3d 1307 (11th Cir. 2016), Chan argues that he did not defraud his customers because they "got exactly what they paid for" and as a result his statements did not mislead them about the "nature of the bargain."  Id. at 1312.  But his customers did not get "exactly what they paid for" because they paid for supplements that were legal to sell and safe to consume.  There is ample evidence to sustain the mail fraud convictions and letting them stand will not result in a miscarriage of justice.[1]

### B.

Chan contends that the district court erred by declining to notice the FDA rule banning ephedrine.  He sought to introduce that rule to substantiate the statement on his website that the FDA approved the use of ephedrine for "any other disease."  We review evidentiary rulings only for an abuse of discretion.  United States v. Henderson, 409 F.3d 1293, 1297 (11th Cir. 2005).  We need not

---

[1] Chan also argues that the indictment was insufficient to charge him with the mail fraud counts, but that argument merely rehashes his meritless sufficiency-of-the-evidence claim.  His argument does not assert any of the grounds on which an indictment can be attacked as insufficient.  See United States v. Woodruff, 296 F.3d 1041, 1046 (11th Cir. 2002) (listing three grounds on which a defendant can attack the sufficiency of an indictment).  Instead, it asserts that the government failed to prove that he participated in a scheme to defraud instead of a scheme to deceive, which is just another way of putting his sufficiency-of-the-evidence claim.

disturb the verdict to correct an evidentiary error unless it substantially influenced the outcome. United States v. Fortenberry, 971 F.2d 717, 722 (11th Cir. 1992).

Chan argues that the district court erroneously concluded that the FDA rule was irrelevant or likely to confuse the jury. He asserts that the rule was relevant because it was the source of the statements he "paraphrased" on his website. But Chan's website badly misstated the FDA rule. Compare Doc. 1 at 2 ("The FDA has approved the use of Ephedrine . . . for the treatment of asthma, colds, allergies, or any other disease."), with 69 Fed. Reg. at 6793 ("The use of ephedrine . . . for the treatment of asthma, colds, allergies, or any other disease is beyond the scope of this final rule."). And admitting the rule as evidence could have frustrated the district court's ability to instruct the jury on the law. See United States v. Oliveros, 275 F.3d 1299, 1306–07 (11th Cir. 2001) ("Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact."). As a result, the court was correct to exclude the FDA rule because it would not have made the truthfulness of Chan's statements any more probable and could have confused the jury. Fed. R. Evid. 401; 403.

Alternatively, even if the court erred by excluding the rule, any error was harmless because it did not substantially influence the outcome. Fortenberry, 971 F.2d at 722. The government produced ample evidence showing that Chan's

7

statements were false and misleading, including testimony by the FDA agent and by customers who were in fact misled by those statements. The court's exclusion of the FDA rule did not substantially influence the outcome of the case.[2]

### C.

Chan contends that the district court erred in calculating his base offense level by applying United States Sentencing Guidelines § 2D1.11 instead of § 2D1.13. We review de novo the district court's application of the guidelines. United States v. Arguedas, 86 F.3d 1054, 1059 (11th Cir. 1996).

The jury convicted Chan for knowingly distributing a listed chemical in violation of 21 U.S.C. § 841(f)(1). Appendix A of the guidelines specifies that courts should apply either § 2D1.11 or § 2D1.13 to convictions under § 841(f)(1). Section 2D1.11, titled "Unlawfully distributing, importing, exporting, or possessing a listed chemical," provides for a base offense level of 38 if the offense involved at least 9 kilograms of ephedrine. Id. § 2D1.11(d)(1). It provides a three-level reduction for defendants who did not know that the chemical they distributed would be used to manufacture a controlled substance. Id. § 2D1.11(b)(2). By contrast, § 2D1.13, titled "Structuring chemical transactions or creating a chemical

---

[2] Chan argues that 44 U.S.C. § 1507 required the district court to take judicial notice of the FDA rule. Because he did not raise that argument below, we review it only for plain error. United States v. King, 73 F.3d 1564, 1571 (11th Cir. 1996). As already discussed, the court did not err by excluding the FDA rule. And even if it did, Chan cannot show that error "seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings" because there was ample evidence supporting the verdict. See United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002).

mixture to evade reporting or recordkeeping requirements; presenting false or fraudulent identification to obtain a listed chemical," provides for a base offense level of six unless the defendant knew that the chemical he distributed was to be used to manufacture a controlled substance. Id. § 2D1.13.

The district court properly applied § 2D1.11. Its title expressly covers Chan's offense of distributing more than 11 kilograms of ephedrine. Id. § 2D1.11. By contrast, § 2D.1.13 applies to mere record-keeping or document fraud violations, like creating a chemical mixture to evade record-keeping requirements or presenting false documentation to obtain a listed chemical. Id. § 2 D1.13. Chan asserts that § 2D1.11 applies only when a defendant intended that the distributed chemical be used to manufacture a controlled substance. But § 2D1.11 includes a reduction for defendants who did not know that the listed chemical they distributed would be used to manufacture a controlled substance, which shows that § 2D1.11 applies even if a defendant did not intend for the chemical to be used to manufacture a controlled substance.

## D.

Chan contends that the district court erred by including in the loss amount nearly $2 million in sales that occurred between April 2005 and August 2007. We review for clear error the district court's factual findings related to sentencing enhancements. United States v. Barakat, 130 F.3d 1448, 1452 (11th Cir. 1997).

Chan argues that the legality of the FDA rule was "in flux" between 2005 and 2007 because a Utah district court decided in 2005 that the rule exceeded the FDA's statutory authority and because his supplier, Hi-Tech, challenged the FDA rule in a Georgia district court. Those proceedings had no effect on the legality of the FDA rule as to Chan because district court judges "lack authority to render precedential decisions binding other judges, even members of the same court." Am. Elec. Power Co., Inc. v. Connecticut, 564 U.S. 410, 428, 131 S. Ct. 2527, 2540 (2011). And an FDA agent informed Chan in 2005 that the rule was in full effect. The court did not err by including sales from 2005 to 2007 in the loss amount.

## E.

Chan contends that his sentence was substantively unreasonable because it resulted in an unwarranted sentence disparity with other ephedrine distributors. We review the reasonableness of Chan's below-guidelines sentence only for abuse of discretion. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). "A well-founded claim of disparity . . . assumes that apples are being compared to apples." United States v. Docampo, 573 F.3d 1091, 1101 (11th Cir. 2009).

Chan argues that the district court erred by failing to consider that two of his suppliers at Hi-Tech Pharmaceuticals received lower sentences than he did. But neither was similarly situated to Chan. Unlike Chan, both suppliers pleaded guilty.

One supplier was not prosecuted for distributing ephedrine or defrauding customers about the legality of supplements containing ephedrine. The other was convicted of only one count of mail fraud and one count of introducing adulterated foods into interstate commerce. By contrast, a jury convicted Chan of ten counts of mail fraud, ten counts of introducing adulterated food into interstate commerce, five counts of distributing a listed chemical, and five counts of money laundering.

Put simply, an apples-to-apples comparison is impossible when Chan went to trial and was convicted of 30 counts while his suppliers pleaded guilty and were convicted of 3 counts total. The district court did not abuse its discretion by declining to consider sentencing disparities between Chan and his suppliers.

F.

Chan contends that the forfeiture of his house is disproportionate to the gravity of his offense and violates the Eighth Amendment. We review de novo the district court's legal conclusions regarding forfeiture and its findings of fact for clear error. United States v. Puche, 350 F.3d 1137, 1153 (11th Cir. 2003).

There is a strong presumption that a criminal forfeiture is not excessive if it is within the statutory range of fines prescribed by Congress. United States v. Dicter, 198 F.3d 1284, 1292 (11th Cir. 1999). The maximum fine for a money laundering conviction is twice the amount of the criminally derived property involved in the transaction, 18 U.S.C. § 1957(b)(2), which in this case would

11

presumptively permit forfeiture of property up to about $8 million in value.  Chan concedes that the forfeited house is worth less than the proceeds he obtained through his mail fraud scheme.

Chan's sole argument against the forfeiture of his house is that part of the funds he used to purchase it was legitimately obtained.  He offers no evidence to support that argument.  Absent any evidence showing that Chan used legitimate funds to purchase the forfeited property, he cannot overcome the presumption that the forfeiture was not excessive because it was well within the statutory range of fines prescribed by Congress.  See Dicter, 198 F.3d at 1292.  The district court did not err by ordering Chan to forfeit his house.

**AFFIRMED.**