[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11098
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00529-RH-MJF

CRYSTAL LEANNE KOCSIS,

Plaintiff-Appellant,

versus

FLORIDA STATE UNIVERSITY
BOARD OF TRUSTEES,
Florida Public Entity,

Defendant-Appellee,

JENNIFER BROOMFIELD,
FSU Title IX Director, et al.,                    Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 4, 2019)

Before TJOFLAT, WILLIAM PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Krystal Kocsis, proceeding *pro se*, appeals the District Court's grant of summary judgment in favor of the Florida State University Board of Trustees ("University") on her complaint alleging claims of sexual harassment and retaliation for engaging in statutorily protected activity in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681.  As to her sexual harassment claim, she argues that the District Court erred in finding that there was no evidence showing that an appropriate person at the University had actual knowledge of the harassment and failed to act and that the University was not deliberately indifferent.  As to her retaliation claim, she argues that the District Court erred in finding that there was no evidence showing a causal connection between her participation in an investigation of her claim of sexual harassment and materially adverse employment action.  She also raises on appeal, for the first time, a disparate treatment claim and an argument under the so-called "cat's paw" theory of liability.  We find no error in the District Court's grant of summary judgment, and accordingly affirm.

I.

Kocsis pursued her Ph.D. at the Florida State University College of Criminology and Criminal Justice from 2013 to 2016.  In fall 2013, Kocsis took a

2

class taught by Dr. Marc Gertz.  Kocsis alleges that Dr. Gertz made offensive statements to women and minority students in class.  Kocsis recorded the lectures and saved the recordings.  In her complaint, Kocsis lists examples of Dr. Gertz's statements: "[W]hether she is pretty or not, that could be an argument," "You can't expect to get by on your looks forever," "[A double-barreled question is] like saying Ellie . . . is not only short, Ellie is short and ugly," "You're black; you voted for Obama," "Oh Javier, you're Hispanic, you must go to church somewhere."

In November 2013, Kocsis approached Dr. Carter Hay about Dr. Gertz's remarks.  Dr. Hay told Kocsis to bring the matter to Dean Thomas Blomberg, the Dean of the College of Criminology and Criminal Justice.  Dr. Hay then emailed Dean Blomberg to notify him that Kocsis confronted him about "things that Marc Gertz says and does in his . . . course that she finds offensive and inappropriate."[1] Kocsis never went to Dean Blomberg.

After talking to Dr. Hay, Kocsis claims her grades began to drop.  She was also denied a teaching assistantship, which she was considered for by a committee

---

[1] Dr. Hay's email also included the following:

> I did not ask for details on this; in fact, I explicitly interjected to let [Kocsis] know that I don't oversee or supervise faculty and that I can't be the arbiter for this.  I gave her . . . advice: If she feels that this requires action or consideration of some kind, she should pursue this with you.  She had suggested the possibility of contracting someone in the student affairs, but I indicated that the normal protocol is to initiate this with our Dean. . . .

of professors upon admission and in the spring semester every year.  An assistantship comes with a stipend and tuition waiver.

In June 2015, Kocsis filed an official complaint about Dr. Gertz's classroom statements with the University's Office of Equal Opportunity and Compliance ("EOC").  The EOC investigated, which entailed interviewing students and faculty, reviewing Kocsis's audio recordings, and reviewing emails.  The EOC concluded that "some of the alleged events occurred, [but] were not enough to rise to the level of a policy violation."

In November 2015, Kocsis initiated an informal grade appeal for a grade she received in Dr. Daniel Mears's class.  In February 2016, the University declined her appeal.  In May 2016, Kocsis left the University.

Kocsis seeks compensatory damages for the denied tuition waivers, denied assistantship, lost wages, and moving costs.  She also seeks an injunction requiring the University to increase her grades and to suspend Dr. Gertz while it conducts a more thorough investigation into his conduct.

The District Court granted the University's motion for summary judgment. Kocsis submitted the EOC report, which included interview notes and email correspondence; a 2005 report from the University's Audit Office summarizing prior allegations of sexual harassment; a packet with information from her grade appeal; the report of an independent investigation into the University's College of

4

Criminology; information on students in her program; and questionnaires by three former professors. The University submitted Kocsis's transcript, the University's graduate handbook, the EOC's investigative summary, and Kocsis's deposition. The District Court ruled that there was no evidence showing that an appropriate person had actual knowledge of Dr. Gertz's classroom statements in 2013 and that the University was not deliberately indifferent in failing to address them. Also, the District Court ruled that there was no evidence showing a causal connection between participation in an investigation and materially adverse action.

## II.

We review a district court's grant of summary judgment *de novo*, viewing all evidence in the light most favorable to the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

## A.

Title IX guarantees that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Discrimination under Title IX encompasses

5

teacher-on-student sexual harassment. *See Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1283 (11th Cir. 2005). To survive a motion for summary judgment, a plaintiff seeking damages and alleging teacher-on-student sexual harassment must submit evidence showing "(1) [an official] with the authority to take corrective measures had actual notice of the harassment; and (2) the official with such notice was deliberately indifferent to the misconduct." *Id.* at 1284. Actual notice of sexual harassment is required; liability may not be based on constructive notice or *respondeat superior* theories. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285, 118 S. Ct. 1989, 1997 (1998). For Title IX liability to arise, a school official who possess, at a minimum, the authority to institute corrective measure on behalf of the school must have actual knowledge. *Id.* at 290, 118 S. Ct. at 1999.

Deliberate indifference occurs when the official's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648, 119 S. Ct. 1661, 1674 (1999). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it." *Id.* at 645, 119 S. Ct. at 1672 (quoting RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1415 (1st ed. 1966)). In essence, a school must "official[ly] deci[de] . . . not to remedy the violation" for its response to rise

to the level of deliberate indifference. *Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248, 1259 (11th Cir. 2010).

Here, the District Court did not err in granting summary judgment on Kocsis's sexual harassment claim because there is no evidence that the University (1) received actual notice of the claim prior to 2015 or (2) was deliberately indifferent to the claim after receiving actual notice.

We first discuss actual notice. As an initial matter, Kocsis argues that constructive knowledge, instead of actual knowledge, should be the standard for sexual harassment claims involving non-monetary relief. In *Gebser*, the Supreme Court interpreted Title IX and decided that "it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.*, without actual notice to a school district official." 524 U.S. at 285, 118 S. Ct. at 1989. Kocsis asserts that *Gebser* applies only to cases involving monetary damages. She says *Gebser* does not apply here because she brings claims for both monetary and injunctive relief. We need not and do not decide today whether Kocsis's reading of *Gebser* is correct.[2] Our answer to that

---

[2] It is not clear whether the actual-notice standard established in *Gebser* and *Davis* apply to claims for non-monetary relief. Some non-binding authority supports Kocsis's contention that it does not apply. For instance, this Court has noted in passing that "subsequent to . . . *Gebser* and *Davis*, the Office of Civil Right of the U.S. Department of Education ("OCR"), the agency responsible for regulatory enforcement of Title IX has provided guidance for schools in recognizing and responding to sexual harassment of students. While recognizing the

question would not affect the outcome of this case because the only cognizable

claims before us are claims for monetary relief.[3]

requirement of actual notice for private actions seeking money damages, OCR continues to assert that . . . *for private actions for injunctive and other equitable relief*, a school has notice if a responsible employee knew, or in the exercise of care should have known of the harassment." *Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1287 n.9 (11th Cir. 2003) (emphasis added) (citation omitted) (citing Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 66 Fed. Reg. 5,512 (Jan. 19, 2001)). Drawing on *Hawkins*, a Florida District Court observed: "It may be that claims for injunctive relief are not governed by the standards set out in *Gebser* and *Davis*, both of which cases involved monetary liability and a legal rationale which seems largely dependent on the negative impact of monetary damages awards upon educational institutions." *Palmer* ex rel. *Palmer v. Santa Rosa County*, No. 3:05-CV-218/MCR, at 5 n.10 (N.D. Fla. Dec. 8, 2005) (stating that the parties did not fully argue whether actual knowledge is the appropriate standard when non-monetary relief is at stake and that further briefing may be useful on the issue); *see also Sandoval v. Hagan*, 197 F.3d 484, 499 n.14 (11th Cir. 1999) (discussing *Gebser* and explaining that "the Supreme Court has distinguished between injunctive and compensatory relief in terms of the applicable notice standard" and that "compensatory relief requires actual notice" while "injunctive relief based on an implied cause of action only requires 'adequate' notice" (citation omitted)), *rev'd on other grounds*, *Alexander v. Sandoval*, 532 U.S. 275, 121 S. Ct. 1511 (2001).
[3] In her complaint, Kocsis predominantly asks for compensatory damages, but she also asks for non-monetary relief in two ways. She asks that the Court (1) require the University to retroactively increase her grades, and (2) grant an injunction against the University requiring that it suspend Dr. Gertz until the University conducts a more thorough investigation into his alleged harassment. Only the latter relates to her sexual harassment claim—the former relates to her retaliation claim discussed in subpart III.B, *infra*. Therefore, Kocsis can only argue for constructive notice, as opposed to actual notice, in relation to her claim for an injunction requiring the University to suspend Dr. Gertz and conduct another investigation.

Kocsis does not have standing for the injunction she seeks. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185, 120 S. Ct. 693, 706 (2000). To establish standing for injunctive relief "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1149 (2009). Here, the undisputed facts show that Kocsis is not actually and imminently under threat of suffering injury. She is no longer at the University and has not indicated any intent to return. Indeed, by her own admission, the requested injunction has nothing to do with Kocsis. Kocsis states in her complaint: "The . . . injunction is intended to prevent Dr. Gertz from further subjecting *any more students* to harassment resulting in a hostile learning environment." (emphasis added). But we do not grant injunctions with the sole purpose of protecting third parties—parties not involved in the litigation in any way—from possibly suffering injuries similar to the plaintiff's alleged injuries. *See City*

8

The undisputed evidence shows that no individual with authority to take corrective action received actual notice until 2015. Kocsis alleges that she notified Dr. Hay, the director of graduate programs, in 2013, but she offers no evidence to show that Dr. Hay had authority to institute corrective measures on behalf of the University. What's more, she does not dispute that Dr. Hay lacked authority to take corrective action. Dr. Hay told Kocsis that if she wanted any action taken, she needed to report her complaints to Dean Blomberg, who supervised the faculty and could take corrective action if appropriate. Kocsis never brought the matter to Dean Blomberg's attention.

Dr. Hay's email to Dean Blomberg, where he described his conversation with Kocsis, did not give the University actual notice. Dr. Hay stated in the email that Kocsis was agitated and that she thought Dr. Gertz did some offensive and inappropriate things in class. Dr. Hay also stated that he did not know the specifics. The email does not contain enough detail to notify the University of the nature of Dr. Gertz's comments or the possible need to act.

---

*of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 1667 (1983) ("Lyons' standing to seek the injunction requested depended on whether *he* was likely to suffer future injury from the [defendant].") (emphasis added). So this injunction misses the mark on standing. Kocsis is before this court—not other students—so it is Kocsis's vulnerability to future injury we focus on—not other students'. Kocsis asks for an injunction solely for the benefit of other students—we do not have such broad-sweeping power.

The University received actual notice of Kocsis's sexual harassment claim in 2015, when she formally filed a complaint with the EOC.  The University had no duty to act until it received actual notice.

As for deliberate indifference, Kocsis submitted no evidence that the University was deliberately indifferent to her claims after 2015 when its duty to respond arose.  The undisputed evidence shows the following: Kocsis filed her complaint with the EOC in 2015; the EOC then promptly launched a months-long investigation, which involved interviewing student and faculty, reviewing audio recordings from Dr. Gertz's classes, and reviewing email evidence; and the EOC concluded that none of Dr. Gertz's comments rose to the level of sexual harassment.

Based on the foregoing discussion, the District Court correctly granted summary judgment in favor of the University on the sexual harassment claim.

B.

1.

Retaliation claims under Title IX are analyzed under the framework for claims under Title VII of the Civil Rights Act of 1964 ("Title VII").[4]  Under Title

---

[4] This Court has not issued a published decision establishing the standard for a retaliation claim under Title IX.  However, in an unpublished decision, this Court stated that it will analyze Title IX retaliation claims under Title VII's framework.  *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 (11th Cir. 2013) (per curiam) (unpublished opinion).

VII, "the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse . . . action; and (3) that there is some causal relation between the two events." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam).

An individual engages in protected expression when she opposes practices made unlawful by the relevant statute (the opposition clause) or participates in any manner in an investigation under the relevant statute (the participation clause). *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999). Opposition must be based upon a good faith belief that is objectively reasonable under existing substantive law. *Id.* at 1351. Under Title VII, we examine "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [an individual's] performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993). "[S]poradic use of abusive language, gender-related jokes, and occasional teasing" will not constitute a Title VII violation. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2284 (1998).

Title VII protects individuals from retaliation that produces an injury or harm. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). The retaliatory action must be materially adverse, meaning that it would have "dissuaded a reasonable [individual] from making or supporting

11

a charge of discrimination." *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

A causal link between protected expression and the materially adverse action arises where the defendant was aware of the protected expression and took materially adverse action as a result. *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Causation must be established according to traditional principles of but-for causation, which requires "proof that the desire to retaliate was the but-for cause of the challenged . . . action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 2528 (2013).

Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse action. *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). If the defendant carries this burden, the plaintiff must demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions. *Id.* A plaintiff must show pretext with "concrete evidence in the form of specific facts." *Id.* Mere "conclusory allegations and assertions" will not suffice. *Id.* An employer's pretextual reasons may be shown "by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Springer v. Convergys*

12

*Customer Mgmt. Grp.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (per curiam) (quoting

*Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*

*by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58, 126 S. Ct. 1195, 1197 (2006)).

The District Court did not err in granting summary judgment on Kocsis's

retaliation claim because she failed to present evidence showing that any adverse

actions taken against her were caused by her protected expression.  Furthermore,

Kocsis failed to present evidence refuting the University's legitimate, non-

retaliatory reasons for its actions.  Accordingly, we affirm the District Court's

grant of summary judgment on Kocsis's retaliation claim.

Kocsis did not submit evidence of a connection between her protected

expression and adverse action.  Kocsis's protected expression did not occur until

2015, when she filed her EOC complaint and participated in the investigation into

Dr. Gertz's alleged sexual harassment.  Kocsis first voiced her opposition to Dr.

Gertz's comments in 2013 when she complained to Dr. Hay.  While Kocsis may

have subjectively believed that Dr. Gertz's comments were unlawful at the time,

her opposition did not rise to the level of protected expression because her belief

was not objectively reasonable.  *See Clover*, 176 F.3d at 1351.  Under this Court's

substantive law, comments and language must go far beyond offensiveness to rise

to the level of objective illegality; they must be frequent, severe, physically

threatening, humiliating, or offensive to such a degree that it interferes with the

complainant's performance.  *See Faragher*, 524 U.S. at 787–88, 118 S. Ct. at

2283–84.  Here, Kocsis did not present evidence showing that Dr. Gertz's

comments rose to that level.  Contrarily, the EOC investigative report shows that

the two students specifically targeted by Dr. Gertz's comments—Ellie and Javier—

were unbothered.  When asked about the comments directed at her, Ellie said "it

was kind of funny . . . it wasn't a big deal . . . I really didn't take any offense to it."

And Javier doesn't remember Dr. Gertz making the comment Kocsis alleges, but

he says "[i]f he did [say that], I would have just laughed it off."  Therefore, the

undisputed evidence shows that the targeted individuals were not offended, and

there is no evidence that comments interfered with anyone's classroom

performance.

Because Kocsis's protected expression began in 2015, only actions taken

after the complaint's filing could be retaliatory actions.  *See Nassar*, 570 U.S. at

352, 133 S. Ct. at 2528.

In her complaint, Kocsis asserts that the University took the following

adverse actions: (1) forced her to leave the University because of its unwillingness

to resolve the issues of harassment, (2) reduced her grades, (3) denied her a tuition

waiver, (4) denied her a fair grade appeal process, (5) and denied her an

assistantship position.  Kocsis failed to present evidence that these actions were

retaliatory.

14

Kocsis's claim that the University forced her to leave is contradicted by her own deposition. Kocsis states that she left the University for health and financial reasons and that the University did not ask her to leave. Kocsis's claim that the University retaliatorily reduced her grades, and consequently denied her a tuition waiver, is contradicted by the timeline—Kocsis's grades dropped in 2013 and 2014, not after her protected expression. Kocsis's claim that the grade appeal process is retaliatory is unsupported by evidence. Based on the undisputed description of the grade appeals process in Kocsis's complaint, the process applies equally to all students. Moreover, Kocsis offered no evidence that she was denied an appeal based on her protected expression. Kocsis's claim that she was denied an assistantship position is also inconsistent with the timeline—she was denied assistantship positions three times before she made her protected expression—upon admission, and after both her first and second year in the program. The University also offered a non-retaliatory reason for denying Kocsis an assistantship position: the students who received the positions were more qualified. At that point, the burden shifted to Kocsis to produce evidence showing that the proffered non-retaliatory reasons were mere pretext. *See Bryant,* 575 F.3d at 1308. She offered no such evidence.

2.

15

In her appeal, Kocsis alleges a disparate impact claim and "cat's paw" theory of liability.  Issues raised for the first time on appeal are waived.  *Blue Martini Kendall, LLC v. Miami Dade Cty.*, 816 F.3d 1343, 1349 (11th Cir. 2016). Similarly, arguments not presented in a party's initial brief or raised for the first time in a reply brief are waived.  *United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999).

Here, Kocsis has waived any argument on disparate treatment because she failed to raise it before the District Court.  She used the term "disparate treatment" once in her complaint while describing her retaliation claim, but she never asserted a claim of disparate treatment.  The District Court did not recognize a disparate treatment claim, and Kocsis did not object that such a claim had been overlooked.

Similarly, Kocsis has waived her argument asserting the cat's paw theory of liability because she raised it for the first time in her reply brief on this appeal.

**AFFIRMED.**

16